# Richmond.

## COHEN V. BIG STONE GAP IRON CO.

### November 17, 1910.

### Absent, Cardwell, J.

1. CORPORATIONS—*Sale of Property.*—In the absence of legislative or charter restrictions, a private corporation has the right, by the action of a majority of its stockholders, to sell all of its property, and this right is commensurate with that of an individual.

2. ESTOPPEL—*Liability for Losses—Rights of Innocent Parties Among Themselves.*—Where one of two innocent parties, that is, parties each guiltless of an intentional moral wrong, must suffer a loss, it must be borne by that one who by his conduct, acts or omissions, has rendered the injury possible.

3. CORPORATIONS—*Pledge of Stock—Right of Pledgor to Vote—Rights of Third Persons.*—In the absence of any evidence to the contrary, the pledgor of stock, which continues to stand in his name on the books of the company, has the right to vote the stock at corporate meetings, and his acts in that respect are binding upon the pledgee as between him and the pledgor as to any matter within the express or implied powers of the company, if done in good faith; and whether done in good faith or not, are binding on the pledgee as to an innocent third party who would be prejudiced by setting aside or annulling a contract entered into by such pledgor in union with the other stockholders. As against innocent third persons, the stockholder of record is the owner of stock until a transfer out of his name, and the assignee must abide by his action in the management of corporate affairs.

4. CORPORATIONS—*Fraudulent Conveyance of Property—Right of Pledgor to Vote—Right of Pledgee—Innocent Creditors of Purchaser.*—A pledgee of stock who had the right to sell it without notice and to become the purchaser at the sale, but who refrained from doing so, and allowed the stock to stand in the name of the pledgor for seven years, during all which time he participated in the management and control of the company

and finally voted with other stockholders for the sale of all of its property, will not be allowed, as against innocent creditors of the purchaser, to set up a fraudulent purpose on the part of the pledgor in voting for a sale of the property of the company.    The pledgee may have been free from moral wrong, yet by his conduct he has rendered possible the injury of which he now complains, and this he cannot do to the prejudice of innocent third persons.

Appeal from a decree of the Circuit Court of Wise county. Decree for defendants.    Complainant appeals.

*Affirmed.*

The opinion states the case.

*Bond & Bruce, Scott, Upson & Newcomb,* for the appellant.

*Irvine & Morison,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This suit was instituted by Mrs. Cohen, the appellant, to set aside a conveyance made by the Big Stone Gap Iron Company to the Union Steel and Iron Company, upon the ground that the conveyance was voluntary, fraudulent in fact, and made without authority.

It appears that in the year 1901 the appellant loaned to the Union Steel and Iron Company (which company will hereafter in this opinion be called the Steel Company) the sum of ten thousand dollars, for sixty-nine days, and received as collateral security for its payment fourteen hundred and ninety-five shares of the stock of the Big Stone Gap Iron Company (which company will hereafter in this opinion be called the Iron Company).    In May, 1903, substantially all the property, real and personal, of the Iron Company was sold and conveyed to the Steel Company, the holder of all the stock of the Iron Company except five shares, and the deed prop-

erly recorded in Wise county where the property conveyed was situated. From the date of the said conveyance the business of manufacturing iron, in which the Iron Company had been engaged, was carried on by the Steel Company in its own name until the year 1907, when that company, having become heavily indebted and unable to meet its obligations, was adjudicated a bankrupt.

Before the Steel Company was adjudged a bankrupt payments had been made on the appellant's debt until the balance due thereon was about thirty-nine hundred dollars, as of July 31, 1907.

The specific grounds relied on by the appellant in her bill for setting aside the said conveyance are that "on or before May 19, 1903, Edward L. Harper, president, and Edward L. Harper, Jr., secretary of the Iron Company, devised and entered into a fraudulent scheme for the purpose of hindering, delaying and defrauding the complainant in the collection of her debt, and for the purpose of rendering worthless her se-security therefor, which at that time was ample, and in carrying out and effectuating said fraudulent scheme, made, executed and delivered in the name of the Big Stone Gap Iron Company a pretended deed of conveyance by which it pretended to grant and convey to the said Union Steel and Iron Company," its real and personal estate situated in Wise county, which was practically all of its assets; "that although the consideration expressed in the said deed is one dollar and other valuable considerations, there was in fact no consideration; that the said deed was executed without lawful authority from the stockholders or from the directors of the said company, and without any notice to your oratrix, and without any knowledge or consent on her part; that said deed was executed by the said Edward L. Harper and Edward L. Harper, Jr., without legal authority from the directors or stockholders, and for the purpose of impairing the value of the security so held by your oratrix as aforesaid, and for the

purpose of rendering it worthless, and with the intent to hinder, delay and defraud your oratrix in the collection of her debt. * * * * That at the time of this attempted acquisition by the Union Steel and Iron Company of the property of the Big Stone Gap Iron Company, the said Big Stone Gap Iron Company was in a prosperous condition, and its assets were of value far in excess of its liabilities; and that ever since the pretended conveyance of its property the said Big Stone Gap Iron Company has been abandoned by its officers and directors; and that your oratrix did not learn of this pretended conveyance until, or about, the month of September, 1907. * * * *"

It is true, as charged in the bill, that the president and secretary of the Iron Company executed a deed conveying substantially all of the assets, real and personal, of that company to the Steel Company, but it is not true that they did so without authority. On the contrary, it appears that the conveyance was made pursuant to a resolution of the board of directors of that company, and that the directors were authorized to make sale of all of the company's property by the vote of its stockholders. The Iron Company had the right to sell and convey all of its property, real and personal, if it desired to do so; for it is well settled, that in the absence of legislative or charter restrictions a private corporation has the right, by the action of a majority of its stockholders, to sell all of its property, and that this right is commensurate with that of an individual. 1 Min. Inst. 616; *Barksdale* v. *Finney*, 14 Gratt. at p. 356; *Treadmill* v. *Salisbury. Mfg. Co.*, 7 Gray (Mass.) 393, 66 Am. Dec. 490, 499. There is nothing in the record to show that there was any restriction in the charter of the Iron Company which was chartered under the laws of the State of Kentucky or in the laws of that State which in any way restricted that corporation in its common law right of disposing of its property. The sale and conveyance of the Iron Company was, therefore, within its corporate powers.

It is true that the Iron Company and the Steel Company had directors and stockholders in common, and if this were a controversy between those companies and a minority stockholder of the Iron Company that fact would cause the court to scrutinize the said sale and conveyance closely, and it might, under all the facts and circumstances of the case cause it to set them aside. But that is not this case. This is a contest between the appellant, the pledgee of stock which was voted in favor of the sale and conveyance which she now seeks to have set aside, and the Steel Company's creditors, represented by the trustee in bankruptcy.

It seems to be a case in which, placing the appellant in the most favorable light, one of two innocent parties must suffer. If the relief sought by the appellant be granted, it would be at the expense of the creditors of the Steel Company, for the assets of the Steel Company (composed largely of the property conveyed to it by the Iron Company) will only pay a small part of its indebtedness.

Where one of two innocent parties, "that is, parties each guiltless of any intentional moral wrong, must suffer a loss, it must be borne by that one who by his conduct, acts or omissions has rendered the injury possible." 2 Pom. Eq. Jur., sec. 803; *Hyatt Trustee, &c.* v. *Zion*, 102 Va. 909, 913, 48 S. E. 1, 2.

The creditors of the Steel Company no doubt exercised bad judgment in giving it credit to the extent they did, but they are legally blameless for the situation which confronts the appellant. It is not pretended that they knew, or had the means of knowing that the conveyance now sought to be set aside was not a *bona fide* transaction. It is regular upon its face, purports to be for a valuable consideration, and was placed upon record in the proper clerk's office very shortly after it was executed. The books of the Iron Company showed that its president and secretary were ordered by its board of directors to execute the conveyance, and that its directors were authorized by its stockholders to make sale of all

the company's property. It was, as we have seen, competent for the stockholders to authorize the sale, and the assent of all who appeared to the public to be such was given.

On the other hand, when the pledged stock was transferred to the appellant, it was not registered in her name, but remained on the books of the Iron Company in the name of the pledgor, the Steel Company. That company, there being nothing shown to the contrary, had the right, therefore, to vote the pledged stock at corporate meetings, and its acts in that form would be binding upon the appellant as to any matter with the express or implied powers of the Iron Company as between the pledgor and pledgee, if done in good faith; and, whether done in good faith or not, would be binding on the pledgee as to an innocent third party who would be prejudiced by setting aside or annulling a contract entered into by such pledgor in union with the other stockholders.

In the case of *Elyea* v. *Lehigh Salt Min. Co.*, 169 N. Y. 29, 61 N. E. 992, where the question of the binding effect of the action of the pledgor of stock on the pledgee was considered by the Court of Appeals of New York, it was said: "The plaintiff insists that, notwithstanding the transfer of the stock to her was unregistered on the books of the company, she was not bound by a contract which was not within the express or implied powers of the corporation. The contract and the acts performed under it were, however, competent for the stockholders to authorize, within the statute and the rules of law, and the assent of all was given, who appeared to the public to be such. The plaintiff is in no position to object. The statute under which the company was organized recognizes only the pledgor of stock, when it still remains registered in his name on the books, as being competent to vote at corporate meetings; and it follows, if his acts in that form would be binding, that a contract with third persons entered into by him in union with the other stockholders will be binding upon his pledgee and assignee. *Campbell* v. *American Zylonite Co.*, 122 N. Y.

455, 460, 25 N. E. 853, 11 L. R. A. 596; *Palmer* v. *Cypress Hill Cemetery*, 122 N. Y. 435, 25 N. E. 983; *Treadwell* v. *Manufacturing Co.* 7 Gray (Mass.), 393, 405, 66 Am. Dec. 490.

"The Retsof Company, with which the transaction was had, was entitled to look to the stockholders of record, and to rely upon the evidence of the title to the shares of stock. It is also a general rule that an equitable assignment of shares of stock does not effect a novation of membership, or place the assignee in privity with the other shareholders, until a formal transfer has been executed. Until a transfer out of his name, the stockholder of record is to the world the owner of the stock, and the assignee must abide by his action in the management of corporate affairs. The plaintiff is bound, as far as the Retsof Company is concerned, by Bissell's action in assenting to the sale of the property to that company. Whatever her rights against him or against Fuller, who appears to have been notified of the assignment to her of the stock, they are not involved in this action, which seeks to avoid the sale to the Retsof Company as being illegal and of no effect as to plaintiff." See also *Leathers* v. *Janny* (La.), 41 La. Am. 1120, 6 South 884, 6 L. R. A. 661; *City of Spokane* v. *Amsterdamsch*, 22 Wash. 172, 60 Pac. 141, 143; *McCaleb* v. *Goodwin*, 114 Ala. 615, 21 So. 967; *Gibson* v. *Richmond, &c. R. Co.*, 37 Fed. 743, 2 L. R. A. 467.

Under the terms of the agreement hypothecating the stock the appellant was authorized, if her debt was not paid at the expiration of the sixty-nine days, to sell the stock at public sale without demand, advertisement or notice, and at such sale to become the purchaser thereof. Yet from the 2nd day of September, 1901, when her debt became due and payable, until the year 1908, after the Steel Company had been adjudicated a bankrupt, she did not exercise her right of sale by which she might have become the legal owner of the stock, had it registered in her name on the books of the Iron Company, in which she would have had a controlling interest, but

permitted the pledgor during this long period to participate in the management and control of that company, and to do, in connection with the other stockholders, the acts of which she now complains, and to authorize the sale and conveyance which she now seeks to have set aside.    It may be conceded that the appellant is guiltless of any intentional moral wrong, yet by her conduct, acts and omissions she made possible the injury which she now seeks to have redressed, to the prejudice of the creditors of the Steel Company who are without fault.

We are of opinion that she is not entitled to the relief sought, and that the decree of the trial court, dismissing her bill, must be affirmed.

*Affirmed.*