## Richmond.

### Peters and Others v. Waverly Water-Front Improvement and Development Co.

#### March 14, 1912.

1. Corporations—*Directors—Ultra Vires Acts—Ratification by Stockholders.*—Although the action of the board of directors of a corporation, in selling and disposing of the entire property of the corporation, may have been in excess of their authority, nevertheless, if it was within the charter powers of the corporation itself, the action of the board is not void, but voidable only, and may be ratified by a majority of the stockholders. ·

2. Corporations—*Directors—Ultra Vires Acts—Relief in Equity—Minority Stockholders.*—Where an act done by the board of directors of a corporation is beyond their powers, but is nevertheless within the powers of the corporation itself, a court of equity will not interfere at the instance of minority stockholders, for the reason that the majority of the stockholders, acting within the powers of the corporation, may at once ratify the unauthorized act, thus rendering of no effect the action which the court is requested to take. If, however, a majority of the stockholders are abusing their powers, and are depriving the minority of their rights, the latter may come into a court of equity to maintain their rights.

3. Costs.—Where defendants in equity have maintained their defense throughout on the merits, resulting in a dismissal of complainant's bill, it is error to decree that the defendants shall pay the costs of taking depositions in their defense, while decreeing all other costs in their favor.

Appeal from a decree of the Hustings Court of the city of Portsmouth. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Garnett & Garnett,* for the appellants.

*Williams & Tunstall, Watts & Hatton,* and *James F. Wright,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

In November, 1908, appellants filed a bill in equity in the Court of Hustings for the city of Portsmouth against appellees, the Waverly Water-Front Improvement and Development Company, Legh R. Watts, and William G. Maupin, Jr., individually and as directors of the company, and the Atlantic Coast Terminal Company, and others. The material allegations of the bill are as follows:

That plaintiffs are owners of forty-two shares out of six hundred shares of the stock of the Waverly Water-Front Improvement and Development Company (hereafter called the Waverly Company); that the company (a Virginia corporation) was chartered for the purpose of acquiring, improving, and developing real estate, and especially a valuable water-front property owned by it, situated on Elizabeth river, in the harbor of Norfolk and Portsmouth, on the northern water-front of the latter city; that in November, 1902, the Waverly Company made a contract with Middendorf & Williams for the sale of all its property at the price of $90,000, $2,500 cash, and the balance in two annual installments; that three years elapsed after the date of the contract, during which time no other payment was made, and at the expiration of that time the principal, with accrued interest, amounted to over $100,000; that on June 22, 1905, at a regular meeting of the stockholders of the company, a resolution was adopted calling on the purchasers for immediate compliance with their contract. At that meeting officers holding 453 shares of the entire stock were elected for the ensuing year, and composed the board of directors. At a called meeting of the board of directors, held on December 13, 1905, all being present, a resolution was adopted authorizing the sale of the property to the Atlantic Coast Terminal Company, in lieu of the sale to Middendorf & Williams, for $92,500. This action on the part of the directors was had, and the deed conveying the property was executed, without the authority of all the stockholders of the Waverly Company, and the act of the president and directors in so attempting to sell all the company's property was beyond their power and authority, and a fraud upon the rights of the plaintiffs, and all other stockholders

who had not received any notice of the intention to make the deed conveying away the company's entire property, and who had not in any way consented thereto. At this meeting $2,500 of the cash payment of $15,000 which was to be paid by the substituted purchaser was assigned by the directors to Middendorf & Williams, who were known to the president and directors to be promoters of the Atlantic Coast Terminal Company and largely interested therein. Legh R. Watts, president of the Waverly Company, was acting in their behalf and interested in effecting the sale. The president and directors, at the December meeting, resolved that Legh R. Watts should be paid $5,000 for his services and expenses, and that Watts & Hatton should be paid the further sum of $5,000 for legal services, and these payments were not made in pursuance of any previous contract. That all these acts by the directors were contrary to equity and good conscience, and in violation of their duties as officers and directors of the Waverly Company; that prior to the execution of the deed to the Atlantic Coast Terminal Company plaintiffs had notified Legh R. Watts, president, that they would not consent to a sale of the property for a less price than was due from Middendorf & Williams; that the president and directors knew that plaintiffs had no notice of the sale, and had not consented thereto; that Legh R. Watts and William G. Maupin, Jr., styling themselves a committee of the directors, notified the plaintiffs by letter that the property had been sold, and that a dividend of $137.50 on each share of the company's stock had been declared, to be paid in cash and notes on surrender of the certificates of stock held by plaintiffs; that this notice was in furtherance of an understanding between Legh R. Watts and the Atlantic Coast Terminal Company and Middendorf & Williams to get in and cancel all outstanding shares of stock held by plaintiffs, to which proposition they had declined to accede; that the president and directors of the Waverly Company were trustees for all the stockholders, and could not lawfully sell the property against the will and consent of plaintiffs as stockholders; that the property had been sold at a sacrifice; that the Atlantic Coast Terminal Company had not paid its notes for the deferred purchase money, and the property was still in their possession; that plaintiffs had promptly and repeatedly,

but in vain, sought redress for the acts complained of, which constituted a fraud upon their rights. The bill concludes with a prayer for parties; that the deed to the Atlantic Coast Terminal Company be declared null and void and set aside; that Legh R. Watts and William G. Maupin, Jr., be held personally liable for loss and injury suffered by plaintiffs; that they may have an accounting with the Atlantic Coast Terminal Company for all profits derived by them from the possession and control of the property; and, finally, that it be enjoined from selling and disposing of the same until such an accounting is had.

To this bill the Atlantic Coast Terminal Company interposed a demurrer, which the court overruled; and each of the defendants filed separate answers, in which they controvert many of the allegations of fact contained in the bill and conclusions of law drawn therefrom. Every suggestion of oppression, unfair dealing, bad faith, or fraud in law or in fact, on the part of the defendants, individually or officially, is explicitly and emphatically denied. The answer of Judge Legh R. Watts is specially full, and furnishes an exhaustive review of the history of the case, giving in detail all the material facts and circumstances which led up to and induced the formation of the Waverly Company, and presents a frank and unreserved statement of his actions and motives in the conduct of its affairs from beginning to end.

The defendants, other than the Atlantic Coast Terminal Company, declined to demur to the bill, but, on the contrary, invited a full and thorough investigation on the merits of all charges affecting their character and conduct in the premises.

At the final hearing, the court, upon the pleadings and evidence, passed the decree under review, dismissing the bill at the cost of the plaintiffs, except only the expense incident to taking depositions, with respect to which it was ordered that the parties, plaintiffs and defendants, at whose instance depositions were taken, should respectively pay the costs thereof.

In disposing of this case we prefer to deal with it, as the hustings court did, on the merits. And at the threshold, it is due to Judge Watts and his associates to say that we find nothing in the record to justify the averment that they have been guilty of any of the acts of impropriety and misconduct with which they

are charged. They owned and represented nearly ninety *per cent.* of the stock of the Waverly Company, and, from a painstaking examination of the record, it is apparent that in the negotiations, sale, and conveyance of the property they exercised their best business judgment, and did what they believed to be for the interests of themselves and the minority stockholders, all of whom were placed upon precisely the same plane.

In these circumstances, the question for our determination is solely one of power—that is to say, whether the corporation, as an original proposition, had authority to do what its agents, the board of directors, did; for, if the company possessed such power, its authority to ratify the irregular acts of its agents follows as a matter of course.

The charter of the Waverly Company was granted by the Circuit Court of Portsmouth on June 12, 1893, and, among other things, provides:

"II. The said company shall have power and authority to * * * sell real estate in the county of Norfolk and in the city of Portsmouth * * *, and generally to do all other things requisite and necessary in and about the acquisition * * * and selling such property as the company may acquire.

"III. The said company may own real estate in the county of Norfolk and in the city of Portsmouth, Virginia, not to exceed, at any one time, one hundred acres, and may dispose of, sell, grant, improve, and convey the same."

The corporation, as was well understood, was organized for the very purpose of acquiring and disposing of this water-front property. Indeed, it owned no other property. The water-front property was acquired as a whole and sold as a whole; and it was not practicable to dispose of it in any other way.

We may concede that the action of the board of directors, in selling and directing a conveyance of the entire corporate property, as set forth in the bill, was in excess of their authority. Nevertheless, the power exercised by them was plainly within the competency of the corporation itself, as we have seen from the charter, and, being within the charter powers, was, therefore, not void, but voidable merely, and capable of ratification by a majority of the stockholders. And it furthermore appears that the

acts of the directors were so ratified by the acquiescence and assent of a large majority of the stockholders (all, indeed, except the plaintiffs) by acceptance of their proportionate shares of the purchase money and the surrender of their stock certificates for cancellation. In this connection, we shall adopt the summary of the learned hustings court in its decree:

"The acts of the directors complained of—namely, the release of Middendorf & Williams from their contract of purchase, the sale and authorization of the conveyance of the property of the Waverly Company to the Atlantic Coast Terminal Company, Incorporated, the repayment to Legh R. Watts of the money expended by him in promoting the sale, the payment to Watts & Hatton of their fee for professional services in defending the suit brought by E. W. White *et als.*, relative to the riparian rights of the Waverly Company in the property sold, and the resolution to dissolve the company—were all matters relating to the internal management of the company's affairs, were acts exercised in good faith and with fair business judgment, with a common purpose for the benefit of all the stockholders of the Waverly Company, without thought of advantage to any one stockholder over another, and are, therefore, free from any suggestion or stain of fraud.

"The acts of the directors, as aforesaid, not being fraudulent in character, and having been ratified by a large majority of the shareholders of the Waverly Company, were thereby validated."

The result reached upon the controlling question in the case is well sustained by the authorities.

A leading case on the subject is the decision of Vice-Chancellor Wigram, in *Foss* v. *Harbottle*, 2 Hare 461. That case was decided in the year 1843, and the principle enunciated by the learned vice-chancellor has been uniformly laid down by leading text-writers on the subject, and repeatedly followed by courts of the highest respectability. The doctrine is accurately epitomized in the brief of counsel, as follows: "When an act is done by some particular agency of a corporation (as in this instance by the board of directors), which is beyond the powers of that particular agency, but is nevertheless within the powers of the corporation itself, a court of equity will not interfere at the instance

of minority stockholders, for the reason that the majority of the stockholders, acting within the powers of the corporation, may at once ratify the unauthorized act, thus rendering of no effect the action which the court is requested to take."

In *MacDougall* v. *Gardner*, 1 Ch. Div. 13, the court adhered to the rule in *Mozley* v. *Alston*, 1 Ph. 790, *Lord* v. *Copperminers' Company*, 1 Ph. 740, and *Foss* v. *Harbottle, supra*. In the main case, at p. 25, Mellish, L. J., (concurring in the opinions of his associates) observes: "In my opinion, if the thing complained of is a thing which, in substance, the majority of the company are entitled to do, or if something has been done irregularly which the majority of the company are entitled to do regularly, or if something has been done illegally which the majority of the company are entitled to do legally, there can be no use in having litigation about it, the ultimate end of which is only that a meeting has to be called, and then ultimately the majority gets its wishes. Is it not better that the rule should be adhered to that, if it is a thing which the majority are the masters of, the majority in substance shall be entitled to have their will followed? If it is a matter of that nature, it only comes to this, that the majority are the only persons who can complain that a thing which they are entitled to do has been done irregularly; and that, as I understand it, is what has been decided by the cases of *Mozley* v. *Alston* and *Foss* v. *Harbottle*. In my opinion, that is the rule to be maintained. Of course, if the majority are abusing their powers, and are depriving the minority of their rights, that is an entirely different thing, and then the minority are entitled to come before this court to maintain their rights; but if what is complained of is simply that something which the majority are entitled to do has been done or undone irregularly, then I think it is quite right that nobody should have a right to set that aside or to institute a suit in chancery about it except the company itself."

See also *National Car Co.* v. *L. & N. R. Co.*, 110 Va. 413, 66 S. E. 88, 24 L. R. A. (N. S.) 1010; *Cohen* v. *Big Stone Gap Co.*, 111 Va. 468, 69 S. E. 359; *Shaw* v. *Davis*, 78 Md. 308, 28 Atl. 619, 23 L. R. A. 294; *Dudley* v. *Kentucky High School* (Ky.), 9 Bush. 576; 1 Morawetz on Corp., secs. 246, 247; 2 Clark and Marshall on Private Corp., p. 1688.

Upon cross-error, we are of opinion that no part of the costs should have been imposed upon the appellees.

For these reasons the decree appealed from, modified in the particular indicated as to costs, must be affirmed.

*Affirmed.*