ELDER et al. v. WESTERN MINING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 29, 1916.)

No. 4724.

1. QUIETING TITLE ⊜⇒7(1)—SUIT TO REMOVE CLOUD—GROUNDS FOR RELIEF IN EQUITY.

There is a legal presumption that any cloud or unlawful incumbrance upon real property inflicts such an injury upon parties interested therein who have the right to have it free from such cloud as will give a

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court of equity jurisdiction to remove it at their suit without proof of other damage.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14, 15, 17; Dec. Dig. ☞7(1).]

2. MINES AND MINERALS ☞105(2)—CORPORATIONS—SUITS BY STOCKHOLDERS —ILLEGAL LEASE OF PROPERTY—"INCUMBRANCE."

Rev. St. Colo. 1908, § 865, which provides that any "incumbrance" of the property of a mining corporation shall be void until it shall have been approved by a vote of a majority of the stock at a proper and legal meeting, applies to a lease of mining property, and a lease not so approved is voidable by the stockholders, and the right of action to avoid it is in them and not in the corporation.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 229½; Dec. Dig. ☞105(2).

For other definitions, see Words and Phrases, First and Second Series, Incumbrance.]

3. MINES AND MINERALS ☞105(2)—CORPORATIONS—LEASE OF PROPERTY—VA-LIDITY—CONSTRUCTION OF STATUTE.

Such statute cannot be construed to validate a lease of the property of a mining corporation made by its directors until it has been repudiated by vote of a majority of the stockholders.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 229½; Dec. Dig. ☞105(2).]

4. CORPORATIONS ☞189(6)—SUIT BY STOCKHOLDERS—LACHES.

A suit by stockholders for the cancellation of a renewal of a lease made by the directors held not barred by laches or acquiescence, where the renewal was executed three or four years before the expiration of the former lease and was concealed from complainants until within less than one year before the commencement of suit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 715; Dec. Dig. ☞189(6).]

5. EQUITY ☞67—LACHES—NATURE AND ELEMENTS.

Equitable estoppel is the indispensable foundation of such laches, acquiescence, or ratification as will bar a suit.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. ☞67.]

6. EQUITY ☞147—PLEADING—MULTIFARIOUSNESS.

A bill is not mutlifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter and will settle the rights of all the parties to the suit, and it is not indispensable that all the parties should have an interest in all the matters involved in the suit, but it is sufficient that each party has an interest in some material matters involved therein and they are connected with the others.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 340; Dec. Dig. ☞147.]

7. CORPORATIONS ☞190—SUIT BY STOCKHOLDERS—PLEADING.

A bill by stockholders of a corporation against other stockholders, alleging that defendants arbitrarily overruled the action of the stockholders in electing a new board of directors, leaving the old board in power, and thereby keeping in effect an illegal lease under which such defendants and others were removing ore from the property of the corporation, held to state a cause of action.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 723–731; Dec. Dig. ☞190.]

Appeal from the District Court of the United States for the District of Colorado; John A. Riner, Judge.

Suit in equity by Rufus C. Elder and Frank E. Mann, executors of the will of George W. Elder, deceased, and Frank E. Mann, against the Western Mining Company, Samuel D. Nicholson, the Adams Mining Company, Julius Rodman, the American Smelting & Refining Company, the Guggenheim Exploration Company, the American Smelters Security Company, the A. M. W. Mining Company, W. W. Sylvester, W. A. Rule, A. D. Grant, H. B. Louderman, Jr., J. F. Broemelsick, W. D. Waters, James Campbell, J. A. Ewing, and the Empire Zinc Company. Decree for defendants, and complainants appeal. Reversed.

This is an appeal from a decree which granted motions of the defendants Western Mining Company, Samuel D. Nicholson, Julius Rodman, the A. M. W. Mining Company, the Adams Mining Company, J. A. Ewing, and the Empire Zinc Company, to dismiss the complaint upon the ground, among others, that it did not state facts sufficient to entitle the plaintiffs to any relief in equity. According to the allegations in the complaint, the plaintiffs were stockholders of the Adams Mining Company, a corporation. They reside in Pennsylvania. The general office and place of business of the Adams Company was in Kansas City, Mo., and its property, certain lode mining claims, was situated in Lake county, Colo. In June, 1899, the Adams Company leased all its property to Samuel D. Nicholson for nine years and eight months from May 14, 1899, until January 14, 1909, for certain royalties specified in the lease. On May 14, 1899, Nicholson and his associates entered upon and thereafter operated the property until December 26, 1902, when he assigned his lease to the Western Mining Company of New Jersey, a corporation organized December 17, 1902, by Nicholson and his associates and of which he has been and is the president, general manager, a director, and a large stockholder. From December 26, 1906, the Western Mining Company, Nicholson, and Rodman, who was a stockholder and director of the Western Mining Company, have remained in possession of the leased premises and have extracted therefrom, sold, and converted to their own use ores of a net smelter value exceeding $2,762,000. On June 1, 1904, the Adams Company made an agreement with the Western Mining Company to extend the term of its lease from January 14, 1909, until January 1, 1914, and on October 31, 1910, it made an agreement with the Western Mining Company to extend its lease six years from January 1, 1914, until January 1, 1920. The statutes of Colorado provided that such leases should be absolutely void, "until the question shall have been submitted at a proper * * * legal meeting of the stockholders and a majority of all the shares of stock shall have been voted in favor of such proposition, * * * and the vote upon such proposition shall be entered on the minutes of the corporation." Revised Statutes of Colorado 1908, § 865. Neither the original lease nor the agreements of extension thereof were submitted to the stockholders or approved by a majority vote of the shares of the stock of the Adams Company.

The Western Mining Company, Nicholson, Rodman, and their associates conspired with the president and the other officers of the Adams Company to prevent the plaintiffs from learning the facts relative to the making of the lease and the extensions thereof, the amount and value of the ore developed in the property of the Adams Company, the amount and value of the ore extracted therefrom yearly from 1899 until December 3, 1914, when this suit was brought, the fact that the question of the making of the original lease was not submitted to nor approved by the stockholders of the Adams Company, and the making and the lack of the stockholders' approval of the extensions of the lease; so that until January 1, 1914, the plaintiffs were ignorant of all these facts, except the fact that the original lease was made in 1909. No reports or statements of the actual production of ore from the property of the Adams Company in tons and in dollars were made to the stockholders of that company for 12 years before the commencement of this suit, although ores worth more than $2,000,000 were extracted from its property during those years. During this time the plaintiffs through their agents and attorneys repeatedly attempted by letter and by personal visits to the general office of the

Adams Company in Kansas City, Mo., to procure reports of the actual sales and shipments of ore from the property of the Adams Company; but such reports and examinations of the books and records of that Company were peremptorily refused them at all times. Until January 9, 1914, the plaintiffs were ignorant of the making and of the terms of the extensions of the original lease, of the fact that those extensions had not been approved by a vote of the stockholders, of the value of the ores developed in and the value of those that had been extracted from the property of the Adams Company, although the plaintiffs had repeatedly sought from the officers of the Adams Company reports and information on these subjects, which had been repeatedly denied them, as well as an examination of the books and records of the company.

The second extension of the lease was made on October 31, 1910, although the first extension did not expire until January 1, 1914. The two extensions were made without notice to or knowledge of the plaintiffs by the president and directors of the Adams Company and Nicholson, the president and general manager, and Rodman, the assistant secretary and one of the directors of the Western Mining Company, the lessee, in order to continue the control and operations of the latter company and its extraction of the ore of the Adams Company for an insignificant royalty, and for this purpose they and the officers of the Adams Company concealed and kept secret from the plaintiffs the value and the amount of the ore developed in and of the production of ore from the property of the Adams Company.

The first extension of the lease expired on January 1, 1914. Nicholson, the president and manager of the Western Mining Company, and Rodman, the assistant secretary, each owned ten shares of stock in the Adams Company. They and the directors and officers of the Adams Company had attended every stockholders' meeting of the latter company from 1899 until the commencement of this suit, and they knew that neither the lease nor the extensions had been approved by a vote of the majority of the shares of the stock of the Adams Company, and they had united in making the extensions, extracting the ore from the property for insignificant royalties and keeping secret from the complainants the value of the ore in and of that extracted from the Adams property, as well as the extensions of the lease and their doings thereunder. On December 18, 1913, thirteen days before the six-year term of the second extension of the lease was to commence, there was an annual meeting of the stockholders of the Adams Company. At that time there were in existence 150,000 shares of the capital stock of that company; 141,000 shares were duly represented by owners or their proxies at this meeting. The complainants and other registered stockholders voted 78,136 shares, a legal majority of all the shares represented against the board of directors and the members thereof and Nicholson, the chairman of the meeting and president of the Western Mining Company, together with Rodman, assistant secretary of that company, Sylvester, the president of the Adams Company, and John A. Ewing, the attorney for both companies, forcibly and illegally overruled and disregarded that vote in order to keep the control of the Adams property in their hands, to sustain the lease and its extensions, and to postpone and defeat an investigation of the leases, contracts, accounts, and acts of the Adams Company, its directors, and Nicholson, Rodman, Ewing, and their associates. Pursuant to these acts, the defendants the Western Mining Company, Nicholson, Rodman, and Ewing, its officers, are still in possession of the property of the Adams Company extracting ores for insignificant royalties under the unauthorized extensions of the lease. The plaintiffs bring this suit on behalf of themselves and other stockholders of the Adams Company similarly situated, and, among other things, they pray that the lease and its extensions be set aside, for an accounting from the Western Mining Company, Nicholson, Rodman, and other defendants who have operated or extracted ore under them, for possession of the Adams property, and for an injunction against the further operation of that property by the defendants.

In their complaint the plaintiffs set forth a claim against the directors of the Adams Company for damages which they allege resulted from breaches of trust, fraud, and ultra vires acts of such directors. But service was obtained upon only two of these directors, and as in the brief of the plain-

tiffs their counsel do not complain of, but practically consent to, the elimination of this cause of action and the dismissal of these two defendants, this claim for damages against the directors of the Adams Company will be considered abandoned and will not be further noticed.

The plaintiffs allege that the Western Mining Company, Nicholson, and Rodman, who took and have held and operated the Adams property under the lease and its extension, have transported through the drifts, levels, and workings of that property ores of other companies for which the Adams Company and the plaintiffs have received nothing, while the privilege of making that transportation was worth $500,000, that those defendants are continuing, and unless enjoined will continue, such transportation, and they pray for an injunction against the further use of the property of the Adams Company for the transportation of ores of other companies or otherwise by the defendants, for an accounting of the transportation, and for a recovery of the amout justly owing on account thereof.

Robert Dull Elder, of Denver, Colo. (George R. Elder, of Leadville, Colo., on the brief), for appellants.

Henry A. Dubbs, of Denver, Colo. (John A. Ewing and Henry C. Vidal, both of Denver, Colo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). [1] The object of this suit is to remove from the title to real estate the cloud of a lease and two extensions thereof which are valid on their faces but are in reality unauthorized and voidable by reason of facts they do not disclose, to quiet the title against those holding under them, to have an accounting and recovery from them of the value of the ore extracted from the land under the unauthorized instruments, for an injunction against the further extraction of ore, and for the possession of the property. The cause of action set forth in the complaint falls well within a familiar head of equity jurisprudence, for there is a legal presumption that any cloud or unlawful incumbrance upon real property inflicts such an injury upon parties interested therein who have the right to have it free from such cloud as will give a court of equity jurisdiction to remove it at their suit without proof of other damage. Schofield v. Ute Coal & Coke Co., 92 Fed. 269, 271, 34 C. C. A. 334, 336; Ormsby v. Ottman, 85 Fed. 492, 493, 29 C. C. A. 295, 296; Westerlund v. Black Bear Mining Co., 203 Fed. 599, 618, 619, 121 C. C. A. 627, 646, 647.

The order challenged by this appeal dismisses the complaint against all the defendants named therein without leave to the plaintiffs to amend. The facts set forth in the complaint appear at first view to entitle the plaintiffs to an avoidance of the last extension of the lease at least, to an accounting and recovery of the amounts found owing, an injunction and possession of the property, and if these averments are sufficient to entitle the plaintiffs to any relief, and therefore to require an answer from the defendants, it is, in the opinion of this court, unnecessary and unwise to attempt to determine at this time the extent of the relief which the plaintiffs may have against any of the defendants. That question will be more wisely and justly determined after the defendants have answered and after the facts of the case have either been specifically admitted or proved. There is no

opinion or statement of the court below of the reasons for its order of dismissal of this suit, and we turn to the brief and arguments of counsel for the defendants for the presumptive reasons for the court's conclusion.

The plaintiffs are Rufus C. Elder and Frank E. Mann, executors of the will of George W. Elder, deceased, and Frank E. Mann, and they bring this suit as stockholders of the Adams Company, for themselves and all others similarly situated. Counsel for defendants say that, since Elder and Mann were appointed as executors by a court of the state of Pennsylvania, they cannot maintain this suit because they have not complied with the provisions of sections 7951, 7952, Mills' Ann. Statutes of Colorado 1912. But if that position is sound it constitutes no ground for the dismissal of the complaint against these defendants, because Mann in his own right has owned since 1899, and still owns, 3,000 shares of the stock of the Adams Company, and he can maintain this suit if the executors cannot.

If the plaintiffs are entitled to any relief against the last extension of the original lease, the acts and possession of defendants under it, the order of dismissal was erroneous, whatever may be the extent of the relief to which the plaintiffs are entitled against the original lease, the first extension, and the acts and possession under them. The discussion of this case, therefore, may be confined to the consideration of the rights of the plaintiffs under this last extension. The claim of the plaintiffs to the avoidance of this extension, to an accounting from the defendants for the ore extracted under it, to an injunction against the further extraction of ore, and to the possession of the Adams property, rests upon two grounds: (1) The invalidity of the extension as against the plaintiffs under section 865, Revised Statutes of Colorado 1908; and (2) the acts of the defendants knowing its invalidity in overruling and disregarding the majority vote of the shareholders at the annual election in December, 1913, whereby a new board of directors was elected, in maintaining the old board in office and themselves in possession of the Adams property under the invalid extension, and in continuing to extract ore from that property.

[2] Section 865 of the Revised Statutes of Colorado 1908, provides:

"The board of directors or trustees of a mining or manufacturing corporation shall not have power to incumber the mines or plant of such corporation, or the principal machinery incident to the production from such mine or plant until the question shall have been submitted at a proper and legal meeting of the stockholders and a majority of all the shares of stock shall have been voted in favor of such proposition; and any mortgaging or incumbering of such property, without such consent shall be absolutely void, and the vote upon such proposition shall be entered on the minutes of the corporation."

A lease is an incumbrance. A lease which is subject to this statute made by a corporation without a legal vote of the majority of its shares of stock approving it is voidable by the stockholders of the corporation and the right of action to avoid it is in them and not in the corporation. Westerlund v. Black Bear Mining Co., 203 Fed. 599, 610, 613, 121 C. C. A. 627, 638, 641; Dillon v. Myers, 58 Colo. 492, 146 Pac. 269, 272, 274, Ann. Cas. 1916C, 1032.

[3] These propositions are conceded, but counsel for the defendants

insist that such a lease, and hence this extension, is not voidable by any stockholder until the holders of a majority of the shares of the corporation have affirmatively repudiated it by act or vote, and that, because the complaint contains no allegation that they had done so before this suit was commenced, it fails to state a cause of action for the avoidance of the extension on account of failure to comply with the statute. They argue:

"The vote of authorization which the statute provided is the vote of the majority. The majority may authorize in the first instance regardless of the wishes of the minority. It can lie quiescent and the lease remain binding as against the entire body of stockholders. The majority cannot be compelled to act, but they can fail to repudiate, and the lease remains valid until they do repudiate. * * * If the majority must affirm where the thing requires affirmance, the majority must avoid where the thing requires avoidance. Otherwise a minority would control the corporation."

This argument is ingenious, but is it sound? If so, the statute which now reads that, "The board of directors or trustees * * * shall not have power to incumber * * * until the question shall have been submitted at a proper and legal meeting of the stockholders and a majority of all the shares of stock shall have been voted in favor of such proposition; and any mortgaging or incumbering of such property, without such consent shall be absolutely void," must be amended and transformed so that in effect it will read, "The board of directors or trustees shall have power to incumber * * * until the holders of a majority of the shares shall by vote or act affirmatively repudiate such incumbrance, and any mortgaging or incumbering of such property shall be absolutely valid until such repudiation is made." Is this the true construction of the statute? The object of the Legislature in its passage was to prevent the incumbrance of the mines, plant, and machinery of a mining corporation without the vote of a majority of the shares of its stock at a proper and legal meeting of the stockholders of the corporation, and to render any such incumbrance without such vote voidable by the stockholders. As the statute now reads, it secures to each stockholder the right, before the property of his corporation can be lawfully incumbered, to be present at a regular and proper meeting of the stockholders at which the question of the incumbrance of the property is to be submitted to their vote. It secures to him the right to oppose that incumbrance before it is approved by argument and conversation with other stockholders and by argument and protest in the open meeting of the stockholders before the vote is taken, and it secures to him the right to vote his stock against the incumbrance. The amended statute proposed would deprive him of the valuable right of defense against the proposition to incumber. It is far easier to defeat than to pass a bill or proposition through a legislative body. It would deprive him of the right to argue and protest against the incumbrance in open meeting where he could present at one time to all who were to act or vote upon the proposition his reasons for opposing it, and it would deprive him of the right to have the question determined by the vote of the stockholders in a regular and proper meeting thereof. Not only this, but it would impose upon him, without warrant of statute or of law, the burdensome handicap

of seeking out the holders of a majority of the stock of his corporation and securing from them, after the incumbrance was imposed, an act or vote of repudiation before he could commence to free the property of his corporation from an unauthorized incumbrance. So radical a change in the terms and effect of this statute passes the bounds of permissible construction, falls far within the line of forbidden judicial legislation, flies in the teeth of the familiar rules of interpretation that a statute must be given a rational, sensible construction, that, if consonant with its terms, it must have the construction which will advance the remedy and repress the wrong (Stevens v. Nave-McCord Mercantile Co., 150 Fed. 71, 75, 80 C. C. A. 25, 29), and that the plain natural meaning of a statute should be preferred to any curious and recondite signification discovered only by the study, ingenuity, and desire of unusually acute and able minds (Northern Pacific Ry. Co. v. United States, 213 Fed. 162, 168, 129 C. C. A. 514, 520).

The statute of 13 Elizabeth, c. 5, to which the statute under consideration is analogous, and with which it was compared in the opinion of this court in Westerlund v. Black Bear Mining Co., 203 Fed. 611, 121 C. C. A. 627, declared that a conveyance in fraud of creditors should be "utterly void, frustrate and of none effect." Statutes to that effect exist in all the states. Such a conveyance, however, is voidable, and any creditor injuriously affected by it may maintain an action to avoid it without first securing its repudiation by a majority of the creditors so affected. Cook in his work on Corporations (6th Ed.) § 596, writes:

"Where notice of a meeting is not mailed 30 days before a meeting, as required by the by-laws, a stockholder who does not attend may have an election held at such a meeting set aside, even though his vote would not have changed the result. He is entitled to be present and argue with the other stockholders, or to buy their stock if he can and wishes to do so."

And our conclusion is that, until the question of the approval of an incumbrance created by the board of directors or trustees upon the property of a mining corporation described in section 865 of the Revised Statutes of Colorado 1908 has been submitted at a proper and legal meeting of the stockholders and a majority of all the shares of stock have voted in favor of such proposition, the incumbrance is voidable by any stockholder, and he may maintain a suit to set it aside without the assent of the majority of the stockholders or of any other stockholder than himself to a repudiation of the incumbrance. Rogers v. Nashville, C. & St. L. Ry. Co., 91 Fed. 299, 305, 316, 33 C. C. A. 517.

Counsel for the defendants cite in opposition to this conclusion Foss v. Harbottle, 2 Hare, 461, 67 English Reports, 189, 203, 204; Macdougall v. Gardiner, 1 Chan. Div. (1875) 13, 25, 26; Peters v. Waverly Water Front Imp. & Devel. Co., 113 Va. 318, 74 S. E. 168, 170; Macon, D. & S. R. Co. v. Shailer, 141 Fed. 585, 593, 72 C. C. A. 631; Venner v. Chicago City Ry. Co., 236 Ill. 349, 86 N. E. 266; Bill v. Western Union Tel. Co. (C. C.) 16 Fed. 14, 19; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Dudley v. Kentucky-High School, 9 Bush (Ky.) 576. The opinions in these cases have not failed to receive

consideration. In two of them (Peters v. Waverly Water Front Imp. & Devel. Co., 113 Va. 318, 74 S. E. 168, 170, and Macon, D. & S. R. Co. v. Shailer, 141 Fed. 585, 593, 72 C. C. A. 631), the majority of the stockholders had duly ratified the unauthorized act. They have not done so in this case. In each of the other cases the cause of action under consideration was the corporation's, and the right of the stockholder to maintain it was derivative and was hampered by many conditions and requirements to which an original action by a stockholder in his own right is not subject. The portions of the opinions pertinent to the questions in this case are so by analogy only. They relate to conditions and requirements of derivative causes of action, and not of original ones. This is a suit in the original right of the stockholder. None of the cases cited was founded on the particular statute of Colorado which conditions the suit in hand, and none of the courts that decided them considered that statute. The foundation of this suit is section 865 of the Revised Statutes of Colorado, and the question here is the true construction of that statute. When the decisions in the cases cited were considered in the light of these facts, nothing was found in them to overcome or dissuade from the conclusion which has been reached, or the reasons which have been stated in support of it. The result is that the complaint stated a good cause of action against the defendants on the ground of the invalidity of the extension under section 865. It also stated a good cause of action against them on account of their overruling and disregarding the election of a new board of directors at the stockholders' meeting of December, 1913, their maintenance of themselves in possession, and their extraction of ore from the property of the Adams Company under the unauthorized extension; and the dismissal of the complaint cannot be sustained on the ground that the plaintiffs could not maintain their cause of action because they had not alleged that a majority of the stockholders of the Adams Company had by act or vote repudiated it.

[4] Counsel for the defendants next contend that the plaintiffs are barred from maintaining their suit by laches, ratification, and acquiescence. The original lease was made in January, 1899, for the term from May 14, 1899, to January 14, 1909. This lease was recorded, and the plaintiffs knew there was such a lease. On June 1, 1904, more than four years and six months before the expiration of the term of the lease, the first contract of extension was made. The term of this extension was from January 14, 1909, until January 1, 1914. On October 31, 1910, three years and two months before the expiration of the first extension, the second contract of extension was made. The term of this extension was six years from January 1, 1914, until January 1, 1920. The plaintiffs were not informed of these agreements of extension. They alleged that they were made secretly and were concealed from them until January, 1914. During this time the defendants were extracting ores worth millions of dollars from the property of the Adams Company for insignificant royalties. The defendants knew, and the plaintiffs did not know, the amount and value of the ores developed in the property, the amount and the value of the ores that were being taken from it year after year. They repeatedly

applied to the Adams Company and its officers for information regarding these amounts and values; but, pursuant to a scheme devised and executed by the Western Mining Company, the lessee, its officers, and the officers of the Adams Company, this information and an examination of the books and records of the Adams Company were denied to the plaintiffs. And at the annual meeting of the stockholders of the Adams Company when the majority of the shares were duly voted against the old board of directors, Nicholson, Rodman, and Ewing, officers of the Western Company, in combination with Sylvester and the members of the old board of the Adams Company, overruled and disregarded that election, held the possession of the Adams property in the Western Mining Company, continued and still continue to extract ore therefrom under the unauthorized extensions of the lease. This last unwarranted usurpation of power, possession, and use was effected in December, 1913, a few days before January 1, 1914, when the term of the last extension commenced, and it has continued since that date under the second unauthorized extension. This suit was brought within a year after that annual election and within a year after the commencement of the term of the last extension. It is true that the contract for that extension was made on October 31, 1910, three years and two months before its term commenced and four years and two months before this suit was commenced, and that the contract for the first extension was made more than four years and six months before its term commenced. But these contracts of extension and their terms were unknown to the plaintiffs until January, 1914, less than a year before the commencement of the suit. And such leases in futuro facilitate abuses and are abnormal. United States v. Noble, 237 U. S. 74, 82, 35 Sup. Ct. 532, 59 L. Ed. 844. When made by directors of a corporation without the requisite statutory approval of the stockholders, they forcibly suggest an intent to forestall and prevent the lawful exercise by the stockholders of their authority in subsequent years shortly before the expiration of the existing lease, and when kept secret from the stockholders of the lessor by their directors, while known to the lessees and their officers, they cannot estop such stockholders from maintaining suits to avoid them against the corporation, the lessees, and their officers who procured or accepted them.

The facts which have been stated negative any possible bar of this suit by laches, acquiescence, or ratification. The directors and officers of the Adams Company hold its property in trust for the plaintiffs its stockholders. The latter had the right to rely upon the faithful discharge by these trustees of their duty upon the legal presumption that they would not make or deliver a lease, or an extension of a lease, of the property of their corporation until it was first approved by a majority vote of the shares of its stock. No duty rested upon the stockholders to watch over or search out the acts of their trustees, and neither the trustees, nor those who secured or accepted leases from them knowing that these leases lacked the requisite statutory approval of the stockholders, may be permitted to defeat the suits of the stockholders to avoid them, because, while ignorant of the existence of them

or of their lack of approval by a vote of the majority of the shares, they did not bring suit to avoid them.

[5] Equitable estoppel is the indispensable foundation of such laches, acquiescence, or ratification as will bar a suit. Knowledge on the part of the person to be estopped, or such notice as would lead the ordinarily diligent to knowledge of the material facts that would ordinarily cause action, ignorance of those facts by the party claiming the estoppel, and silence and inaction for an unreasonably long time by the party to be estopped, causing the party claiming the estoppel to take such a position in reliance thereon that injury to him will result from delayed action to avoid, are essential elements of such an estoppel or of such laches, acquiescence, or ratification by silence and inaction as is here claimed. These elements are not found in the case at bar. On the other hand, according to the averments of the complaint, until January, 1914, the plaintiffs were ignorant of the material facts that the extensions had been made without the approval of a vote of the majority of the shares of the company, of the amount and value of the ore developed in the Adams property, of the amount and value of the ore that was yearly removed, and of the terms under which it was taken, while during all this time the Adams Company, its directors and officers, the Western Mining Company, the lessee, and its officers, Nicholson and Rodman, knew all these facts, and the suit was commenced within a year after the plaintiffs discovered the facts. It was brought far within the time fixed by the analogous statute of limitations at law. Section 4071, Revised Statutes of Colorado. The complaint discloses no unusual facts or circumstances making it inequitable for the plaintiffs to bring their suit within the time fixed by such a statute, but it sets forth many unusual conditions and extraordinary circumstances tending to make it inequitable to forbid the maintenance of the suit even after a longer time than that specified in the statute, such facts as the secret execution of the extensions without the approval of the majority of the shares of the Adams Company years before the terms mentioned in them respectively commenced, the knowledge of the Adams Company, its directors and officers, and of the Western Mining Company, and its officers, of those facts, their knowledge of the amount and value of the ore developed in the Adams property and of the amount and value thereof yearly extracted therefrom, the ignorance of the plaintiffs thereof, and the denial of the officers of the Adams Company of information on these subjects and of the examination of their books and records until January, 1914. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21. Upon the facts set forth in the complaint this suit was not barred by laches, ratification, or acquiescence.

[6] Counsel argue that the complaint was properly dismissed because: (1) The plaintiffs improperly joined therein the cause of action for the removal of the cloud of the lease and its extensions with the cause of action for compensation for the use of the drifts, levels, and workings of the Adams property for the hauling of ores of other companies through them; and (2) because the complaint does not state facts sufficient to constitute a cause of action for this haulage.

If the complaint does not state facts sufficient to constitute a cause of action for the haulage, the statement it contains upon that subject does not effect a fatal misjoinder of causes of action because it states but one cause of action. The court is, however, of the opinion that it states facts sufficient to constitute a cause of action for the haulage founded on the invalidity of the lease and its extensions on account of the absence of their approval by the vote of a majority of the shares of stock of the Adams Company and that, because this cause of action and the cause of action for the removal of the cloud of the lease and its extensions present a common point of litigation, the validity or invalidity of the lease and its extensions, their joinder neither made the complaint multifarious nor wrought a misjoinder of causes of action. No complaint is multifarious which presents a common point of litigation the decision of which will affect the whole subject-matter and will settle the rights of all the parties to the suit, and it is not indispensable that all the parties should have an interest in all the matters contained in the suit, but it is sufficient that each party has an interest in some material matters involved therein and they are connected with the others. Curran v. Campion, 85 Fed. 67, 70, 29 C. C. A. 26, 29; Brown v. Deposit Co., 128 U. S. 403, 412, 9 Sup. Ct. 127, 32 L. Ed. 468; Hayden v. Thompson, 71 Fed. 60, 17 C. C. A. 592.

[7] It is contended that the complaint stated no cause of action against the defendants Nicholson, Rodman, and Ewing. But it contains averments that they caused the overruling and disregard of the legal election of the new board of directors at the annual meeting of the Adams Company in December, 1913, and the subsequent continued possession of the property of the Adams Company and the extraction of ore therefrom by the Western Mining Company under the unauthorized extensions with knowledge that they had not been approved by the shareholders and that Nicholson and Rodman with such knowledge had theretofore caused the like action by the Western Mining Company. These and other allegations in the complaint have led to the conclusion that the complaint ought not to be dismissed against any of the defendants named in the decree challenged until the specific facts of the case are admitted by answer or otherwise, or proved so that the actual connection of each of these parties with the alleged wrong may be clearly seen and a just result attained.

The decree below is therefore reversed, with directions to the court below to deny the motions of the defendants therein named for a dismissal of the complaint and to permit them to answer.