UNITED STATES v. FOUR PACKAGES OF CUT DIAMONDS.

(District Court, S. D. New York. December 19, 1917.)

No. 165.

1. CUSTOMS DUTIES ⬠130—FRAUDULENT VALUATION—FORFEITURE.
   Where a consignor makes a fraudulent valuation in a foreign country, and on such false invoice the goods are shipped and arrive in the United States, the fraud attaches to the goods themselves, and they may be forfeited therefor, even though the consignee is innocent of the fraud and the consignor is beyond the jurisdiction of the laws of the United States and its courts.

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CUSTOMS DUTIES ☞133—PROCEEDINGS FOR FORFEITURE.

A forfeiture of goods for fraudulent entry or undervaluation is wholly penal, and should only be granted upon strict proof.

3. CUSTOMS DUTIES ☞130—FRAUD—FORFEITURE.

Where the correspondence between the consignor, who lived in Holland, and one to whom the cut diamonds were consigned in the United States, the shipment being made through an agent in Cuba, together with the difference between the commercial and consular invoices, indicated an attempt to undervalue the diamonds, they are, under Tariff Act Oct. 3, 1913, c. 16, § 3, par. II, 38 Stat. 183 (Comp. St. 1916, § 5526), declaring that if any consignor, seller, owner, importer, consignee, agent, or other person or persons shall enter, introduce, or attempt to enter or introduce, into the United States any imported merchandise, by means of any fraudulent or false invoice, etc., or shall be guilty of any willful act or omission by means whereof the United States shall or may be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any part thereof, embraced in such invoice, the merchandise, or the value thereof, shall be forfeited, subject to forfeiture, even though the purchaser of the goods, who was the ultimate consignee, was guilty of no fraud.

4. CUSTOMS DUTIES ☞130—FRAUD—FORFEITURE.

In such case, three of the four parcels of cut diamonds were sent from Cuba to the United States by registered mail. Postal Convention, art. 11, dated June 16, 1903, between Cuba and the United States, provides that all matters connected with the exchange of the mails between the two countries not therein provided for shall be governed by the Universal Postal Convention and regulations now in force or which may hereafter be enacted for the governance of such matters in the exchange of mails between countries of the Universal Postal Union generally. Article 16 of the Universal Postal Convention, dated May 26, 1906, under the head "Prohibition," declares that it is forbidden to insert in ordinary or registered correspondence consigned to the post articles liable to customs duty. Rev. St. § 3082 (Comp. St. 1916, § 5785), declares that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise contrary to law, or shall receive, conceal by sale, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been contrary to law, such merchandise shall be forfeited. *Held* that, even though the postal conventions cannot be deemed treaties, because not adopted by the Senate, and are not statutes, because Congress alone has power to enact statutes, nevertheless the importation, being in violation of the postal conventions rule, was a fraudulent practice under the section and Tariff Act, warranting forfeiture.

5. POST OFFICE ☞2—TREATIES ☞3—POSTAL CONVENTIONS—RATIFICATION —NECESSITY—"TREATY."

Postal conventions are not treaties, not being ratified by the Senate; nor are they statutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Treaty.]

In Admiralty. Libels by the United States against Four Packages of Cut Diamonds, claimed by Max Goldstein. Decree for the United States.

Francis G. Caffey, U. S. Atty., of New York City (John Walker, of New York City, of counsel), for the United States.

Crim & Wemple, of New York City (William L. Wemple, of New York City, of counsel), for claimant.

MANTON, District Judge.  A libel was filed against four packages of cut diamonds by the government under a claim of forfeiture.  A stipulation has been filed by Max Goldstein, claimant, for the aggregate value of the property as stated in the libel, and the property has been released to the claimant.  Three of the four parcels of diamonds, for which these four libels of forfeiture have been filed, were a portion of a single shipment by registered mail from Havana, Cuba, to the United States, and the fourth parcel was sent by American Express.

One Cypres, who lived and did business at Scheveningen, Holland, sent the diamonds to Boyer, at Havana, Cuba, with instructions to export them from Cuba into the United States, addressing the package by registered mail to one Jacobson.  Jacobson was an acceptor of the shipper.  Claim is made by the government that there has been a violation of the postal laws, and that the packages themselves are fraught with fraud and deceit in their transmission, and for this reason there must be a forfeiture.  The claimant's connection seems to be as purchaser of the diamonds in question, and he became such by reason of a letter written by Cypres to Goldstein, telling him to get in touch with Jacobson if he wanted to get the diamonds.  By a letter dated November 9, 1915, addressed to Jacobson, Cypres inclosed a list for Jacobson's information, and various ultimate consignees for whom the merchandise was actually intended, one of which was Max Goldstein, the claimant.  A comparison of this list with the items on the consular invoices disclosed the identity of the merchandise referred to and the valuation thereof in American money.  A commercial invoice was sent by Cypres to the claimant on November 9, 1915.  The cost or selling price set forth in the commercial invoice is in Dutch florins and in part in francs.  It is not disclosed, however, whether these are Belgian or French francs.  A comparison, using the regulation of the Treasury Department, between the consular invoices and the private invoices, indicates a difference in value in favor of the consular invoices in each of the four packages, and it is upon this the government claims that fraud attaches to the imported merchandise.  When the registered packages were received in New York, Jacobson employed custom house brokers to clear the packages, but all efforts were stopped by the special agents of the Treasury Department.

The government makes no charge of fraud as against Goldstein. Therefore the theory of the government is that Cypres, the agent in Havana, sent into the United States these diamonds, wrongfully stating their value at the time and place of shipment.  The consular invoice was dated Havana, December 17, 1915, and contained other packages besides those four consigned to Goldstein.  Goldstein's packages alone were seized.  The other packages were released, with the statement that nothing was found which indicated fraud.  Goldstein being relieved of the claim of fraud, I cannot infer that there was any arrangement between Goldstein and Cypres by which more was to be paid than that stated in the consular invoice.  Therefore we have nothing but the statement contained in the commercial invoice sent to Goldstein, and counsel for the defendant contends that the difference in figures can be explained upon the theory of a currency reduction at the

par of exchange, and says that the actual relation of the dollar on the one hand, and the franc and florin on the other, which relation would, of course, be the basis of commercial dealings between America and Europe, was in the case of the florin higher than the par of exchange, and in the case of the franc lower. And it is further contended that the differences shown by Mr. Williams' computation on behalf of the government arises out of Cypres' charging into his commercial invoice, his compensation for transmitting the diamonds by the route of Cuba, and his commission for making the purchase, and it is argued, further, that such items are not dutiable, and the omission of such items from the invoices would therefore not constitute undervaluation.

[1-3] Where the consignor makes a fraudulent valuation in a foreign country, and on such false invoice the goods are shipped and arrive consigned to a merchant in New York, the merchandise is within the protection and subject to the penalties of the commercial regulations of this country, even though the consignor was beyond the jurisdiction of this court and of this country for criminal punishment. United States v. Twenty-Five Packages of Hats, 231 U. S. 358, 34 Sup. Ct. 63, 58 L. Ed. 267. The holding in the cited case seems to be that the fraud attaches to the res, and that the res may be forfeited because of the fraud, even though the consignee is innocent of the fraud; and still it was held in Caldwell v. United States, 8 How. 366, 12 L. Ed. 1115, that, where a forfeiture is sought under a statute providing that the goods or their value may be recovered, the goods and specie cannot be attached in the hands of a bona fide purchaser.

This forfeiture is wholly penal, and should only be granted upon strict proof. Using the treasury values of florins and francs as promulgated by the rule of the department at the time of the arrival of the merchandise, Mr. Williams' figures seem to be correct as to differences in values and duty. The correspondence between Cypres and Jacobson having to do with this merchandise, together with the difference between the commercial and consular invoices, indicate an attempt to undervalue the merchandise, and is not explainable on the theory advanced by the claimant's counsel. I therefore conclude that there was an attempt to defraud which attached to the res, and this attempt on Cypres' part was a violation of section 3, par. H, of the Tariff Act of October 3, 1913 (38 Stat. 183, c. 16 [Comp. St. 1916, § 5526]).

[4, 5] Section 3082 of the Revised Statutes (Comp. St. 1916, § 5785) provides that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise contrary to law, or shall receive, conceal by sale, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to the law, such merchandise shall be forfeited. Article 11 of the Postal Convention, dated June 16, 1903, between Cuba and the United States, provides:

"All matters connected with the exchange of the mails between the two countries, which are not herein provided for, shall be governed by the provisions of the Universal Postal Convention and regulations now in force or which may hereafter be enacted for the governance of such matters in the exchange of mails between countries of the Universal Postal Union generally,

so far as articles of such Universal Postal Convention shall be obligatory upon both of the contending parties."

Article 16 of the Universal Postal Convention, dated May 26, 1906, under the title "Prohibition," provides:

"It is forbidden to * * * insert in ordinary or registered correspondence consigned to the post (b) articles liable to customs duty."

When these packages of diamonds were inserted or consigned to the post, it was a violation of the terms of this Postal Convention which has been adopted by the United States as well as by Cuba. Section 3, paragraph H, of the Tariff Act of October 3, 1913, provides for forfeiture of consignments of merchandise into the commerce of the United States which violated any of its provisions. The reading of this section does not state how the importation may be made, whether by express, freight, or mail. Then, again, the adoption of these Postal Convention laws does not make a violation of any of its provisions a violation of the law. The Postal Conventions cannot be deemed treaties, because they are not adopted by the Senate, and they cannot be deemed statutes, because Congress alone has power to adopt statutes, and that power cannot be delegated. They cannot be considered treaties, because the treaty-making power is confined in the President and the Senate by the Constitution. They are but provisions which determine what merchandise may be received in the mail, but in this case it was a medium for introduction into the commerce of the United States. If it was a violation of the Universal Postal Convention's rules, it is a means of introduction which is accomplished by a forbidden fraudulent practice, such as is condemned by the statute under which forfeiture is claimed. I therefore think that the contention of the government as to three of these packages must be sustained upon this ground.

A decree may therefore be entered for the libelant.