## GOLDBERG v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1921.)

### No. 5766.

1. **Conspiracy ⬅43(6)—Indictment for conspiracy to receive and conceal merchandise unlawfully imported held sufficient.**

In an indictment under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to receive and conceal whisky after its unlawful importation into the United States, knowing the same to have been imported in violation of law, in violation of Rev. St. § 3082 (Comp. St. § 5785), it is not necessary to allege the facts relating to the importation of the whisky.

2. **Conspiracy ⬅43(6)—Indictment for conspiracy to commit an offense required to describe such offense only with certainty to a common intent.**

In an indictment for conspiracy to commit an offense, it is necessary to describe the offense which is the object of the conspiracy only with certainty to a common intent, sufficient to identify the offense.

3. **Conspiracy ⬅43(6)—Indictment held sufficient.**

An indictment for conspiracy to receive and conceal whisky imported into the United States contrary to law, knowing that it had been so imported, in violation of Rev. St. § 3082 (Comp. St. § 5785), and alleging as overt acts that defendants removed the whisky from the railroad cars in which it had been brought into the United States for the purpose of concealing the same, *held* not insufficient because it did not allege the time of such importation, where the importation of whisky was absolutely prohibited by a well-known act of Congress in force several months prior to the overt acts charged, nor because it described the importation in the language of the statute as "contrary to law," without specifying the statute violated.

4. **Indictment and information ⬅71—Test of sufficiency of indictment.**

The true test of the sufficiency of an indictment is that it sets forth the facts which the pleader claims constitute the alleged transgression so distinctly as to advise the accused of the charge which he has to meet and give him a fair opportunity to prepare his defense, so particularly as to

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

enable him to avail himself of a conviction or acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether the facts there stated are sufficient to support a conviction.

5. **Customs duties ⊙⊶121—"Contrary to law," in criminal statute, held not limited to laws then in force.**

Rev. St. § 3082 (Comp. St. § 5785), which makes it an offense to import merchandise "contrary to law," or to receive or conceal such merchandise after importation, knowing it to have been imported contrary to law, is general in its terms, and is not limited to cases of dutiable merchandise imported in violation of the customs laws, or to importations in violation of some law existing at the time of its enactment or its latest amendment; but the words "contrary to law" are to be given their natural and obvious meaning, and the statute applies to an importation in violation of any law in effect at the time of the alleged offense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contrary to Law.]

6. **Customs duties ⊙⊶121—Statute against knowingly receiving or concealing liquor imported contrary to law not repealed.**

The provision of Rev. St. § 3082 (Comp. St. § .5785), making it an offense to receive or conceal merchandise imported contrary to law, knowing it to have been so imported, as applied to whisky, *held* not repealed or superseded by Act Aug. 10, 1917, § 15 (Comp. St. Ann. Supp. 1919, § 3115⅛*l*), prohibiting the importation of distilled spirits, nor by Act Nov. 21, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115¹¹/₁₂gg), prohibiting the importation of intoxicating liquors during the continuance of the war, neither of which acts prohibits or penalizes the receiving or concealing of liquor imported in violation of its provisions.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Criminal prosecution by the United States against Saul Goldberg. Judgment of conviction, and defendant brings error. Affirmed.

James E. Markham, of St. Paul, Minn. (A. J. Hertz, of St. Paul, Minn., on the brief), for plaintiff in error.

Alfred Jaques, U. S. Atty., of Duluth, Minn.

Before SANBORN, Circuit Judge, and TRIEBER and NEBLETT, District Judges.

SANBORN, Circuit Judge. The defendant below in this case was indicted, tried, and sentenced for conspiring with others named in the indictment against them, in violation of section 5440 of the Revised Statutes, section 10201, United States Compiled Statutes, section 37, Criminal Code, to commit, in violation of section 3082, Revised Statutes, section 5785, United States Compiled Statutes, the offense of receiving, concealing, facilitating the transportation and concealment of whisky, after its importation, contrary to law, knowing it to have been imported into the United States contrary to law. He demurred to the indictment, requested the court, after the evidence on the part of the government had been introduced, to instruct the jury to return a verdict in his favor, offered no evidence in his own behalf, made a motion in arrest of judgment, and took the proper exceptions to the court's adverse rulings on these applications.

⊙⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] His counsel argue that the indictment charged him with no offense, and that there was no evidence at his trial that he had committed any offense, and on these grounds they ask a reversal of the judgment against him. They first contend that the indictment does not expressly and directly allege the importation into the United States from the Dominion of Canada of the intoxicating liquors which the defendants are accused of having conspired to receive, conceal, facilitate the transportation and concealment of within the United States. But the defendants were not charged either with importing the liquor or with conspiring to import it. Section 3082 provides: (1) If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or (2) shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender shall be fined, etc. Conceding that direct averments that the defendants knowingly imported the merchandise contrary to law would have been required properly to charge that offense, they were not indispensable to a sufficient indictment for a conspiracy to receive and facilitate the transportation and concealment of merchandise imported contrary to law, knowing that it had been so imported, because the latter charge does not include the offense of unlawfully importing, or of conspiring unlawfully to import, and because the gist of the offense charged in this indictment is neither of the offenses denounced by section 3082, but the conspiracy to commit, not the first, but the second, offense there described, and it is not necessary, in an indictment for a conspiracy to commit an offense, to allege the facts constituting the offense which is the object of the conspiracy with the particularity requisite in an indictment for the commission of that offense.

[2] The conspiracy and the offense which is its object are separate crimes. The gist of the former is the conspiracy and "certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary in stating the object of the conspiracy." Williamson v. United States, 207 U. S. 425, 449, 28 Sup. Ct. 163, 52 L. Ed. 278; United States v. Claflin, 25 Fed. Cas. 433, 435; United States v. Rabinowich, 238 U. S. 78, 85, 86, 87, 35 Sup. Ct. 682, 59 L. Ed. 1211; Anderson v. United States, 260 Fed. 557, 558, 171 C. C. A. 341; Brooks v. United States, 146 Fed. 223, 76 C. C. A. 581; Lemon et al. v. United States, 164 Fed. 953, 90 C. C. A. 617; Brown v. United States, 143 Fed. 60, 74 C. C. A. 214; Gould v. United States, 205 Fed. 883, 126 C. C. A. 1. The failure to make more express and direct allegations than were contained in the indictment of the importation from the Dominion of Canada of the whisky which the defendant was charged with conspiring to receive, conceal, and to facilitate the transportation and concealment of, was not fatal to that pleading.

[3] The indictment contained averments that on December 20, 1919, at Minneapolis, Minn., the defendants Saul Goldberg, Frank Bank, David Posnick, Michael Weisman, and others conspired and agreed

together to commit the offense against the United States and its laws, of receiving, concealing, and facilitating the transportation and concealment of a large quantity of whisky after importation, knowing the same to have been fraudulently imported into the United States and into the city of Minneapolis from the Dominion of Canada, by unloading, taking possession and control thereof, and reloading the same upon motor trucks and other vehicles for the purpose of moving and transporting this whisky to warehouses or other storage houses wherein it was to be concealed, "which whisky had been imported into the city of Minneapolis aforesaid from the Dominion of Canada, in barrels upon freight cars, the number and initial of two of said cars being as follows: PMCKY 40479 and Penn. 281781; the initials and numbers of other freight cars being to the grand jury unknown, and said barrels of whisky were concealed and hidden in such freight cars under loads and cargoes of scrap iron as consignments of scrap iron, and moved from Winnipeg, in the province of Manitoba, Canada, to Minneapolis aforesaid, over and upon the lines of the Canadian Pacific Railway Company and Minneapolis, St. Paul and Sault Sainte Marie Railway Company, the aforesaid PMCKY 40479 car containing twenty-five (25) barrels of the aforesaid unlawfully imported whisky was on the 7th day of January, 1920, on a railroad side track near Eighteenth avenue and Second Street North, in the city of Minneapolis aforesaid; the aforesaid Penn. 281781 car, containing twenty-four (24) barrels of the said unlawfully imported whisky, was, on the 16th day of January, 1920, on a railroad side track near Eighteenth avenue and Second Street North, in the city of Minneapolis aforesaid; another car, containing fifteen (15) barrels of the aforesaid unlawfully imported whisky, the initials and number of said car being to the grand jury unknown, was, on the 2d day of January, 1920, on a railroad side track near Sixteenth avenue and Second Street North, in the city of Minneapolis aforesaid."

The second and third contentions of counsel for the defendants are that it was error to overrule the demurrer to the indictment because it contained no averment of the time or times when the whisky was imported, and because it did not set forth the specific law in violation of which it was imported, nor specify it by title or by reference to the book or page where it might be found. At the time the conspiracy was alleged to have been formed, December 20, 1919, and on the 7th, 8th, and 16th days of January, 1920, when the overt acts therein named were alleged to have been committed, the importation of the whisky from Canada into the United States was and after August 10, 1917, had been prohibited. Food Control Act of August 10, 1917, 40 Stat. 276, 282 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛$l$); Act of November 21, 1918, 40 Stat. 1045, 1046 (Comp. St. Ann. Supp. 1919, § 3115¹¹/₁₂gg). The indictment contains averments that the whisky had been imported contrary to law and that it was on the railroad side tracks in Minneapolis on specific days between January 1 and January 17, 1920, and its importation had been prohibited ever after August 10, 1917. In view of these facts and of the customary time within which railroad freight must be unloaded from the cars,

the defendant could not have inferred or supposed that the whisky had been imported prior to the prohibition of its importation on August 10, 1917, and the failure of the government to aver the times when it was imported, was not a serious defect in its pleading.

Nor was the fact that the government described the importation as it was described in section 3082 as "contrary to law," and did not go further and specify the act of Congress contrary to which it was made, fatal to this indictment, especially in view of the well-known fact that, at the time when this conspiracy is alleged to have been formed and to have been in process of execution, the condition of the Prohibition Acts of Congress was a matter upon which the attention of the citizens of the nation was fixed by the public prints and by the constant discussion of the policy of the government they evidenced, and in view of the further fact that the importation contrary to law was not the offense with which the defendant was charged, but a mere element in the description of the offense which was alleged to have been the object of the conspiracy with which alone he was charged and for which alone he was tried. Counsel cite in support of their objections to the indictment here Keck v. United States, 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505; United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588; United States v. Hess, 124 U. S. 483, 486, 487, 488, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; People v. Albow, 140 N. Y. 130, 35 N. E. 438; State v. Howard, 66 Minn. 309, 68 N. W. 1096, 34 L. R. A. 178, 61 Am. St. Rep. 403, and the opinions of the courts in those cases have been examined before reaching the conclusion which has been stated. That the general rules of law and practice announced in those opinions are sound is not denied, but the offenses charged in those cases were not conspiracies to commit other objective offenses, and the fact is that the objections under consideration go rather to the sufficiency of the description of the offense which was the object of the conspiracy than to the sufficiency of the charge of the conspiracy.

[4] The true test of the sufficiency of an indictment is that it sets forth the facts which the pleader claims constitute the alleged transgression so distinctly as to advise the accused of the charge which he has to meet and give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether the facts there stated are sufficient to support a conviction. United States v. Hess, 124 U. S. 483, 487, 8 Sup. Ct. 571, 31 L. Ed. 516; Miller v. United States, 133 Fed. 337, 341, 66 C. C. A. 399; Armour Pkg. Co. v. United States, 153 Fed. 1, 16, 17, 82 C. C. A. 135, 14 L. R. A. (N. S.) 400; Fontana v. United States (C. C. A.) 262 Fed. 283, 286. This indictment has been repeatedly read and thoughtfully tried by this test, and our conviction is that it clearly complies with every requisite thereof.

[5] Counsel for the defendant contend with great ability, ingenuity, and zeal that the indictment under consideration is insufficient, because it fails to set forth facts which show that the object of the conspiracy, the receiving, concealing, facilitating the transportation and conceal-

ment of the whisky imported contrary to law, knowing it to have been imported contrary to law, constituted a violation of section 3082, and that for these reasons: (1) Because the term "contrary to law" in that section is limited in its meaning to contrary to the provisions of the Customs Act—of which it forms a part—which prescribe regulations for the importation of dutiable merchandise, the collection of the duties thereon, and the penalties for failures to comply with them, and the whisky was not dutiable merchandise in 1916 and 1917 when the conspiracy was formed and executed; (2) because the term "contrary to law" in that section was restricted in its meaning to contrary to a law in force at the time of the enactment of section 3082 or of its last amendment, and at those times the importation of whisky was not prohibited, as it was by the later acts of August 10, 1917, and November 21, 1918, but was permitted upon the payment of duties and compliance with the provisions of the Customs Act; and (3) because the provisions of section 3082 which denounced the offense of receiving, concealing, facilitating the transportation and concealment of whisky, knowing it to have been imported contrary to law, are inconsistent with the provisions of the act of November 21, 1918, which provided that no distilled or other intoxicating liquors should be imported into the United States during the continuance of the present war and the period of demobilization. 40 Stat. 1047.

Counsel cite authorities to the conceded rules of construction that penal laws should be strictly construed, that if they are ambiguous, or their meaning is doubtful, the accused should receive the benefit of the doubt, and that the intent of the Legislature should be derived from the entire acts, and not from particular parts of them, without a careful consideration of all their parts. But other cardinal rules of interpretation are that such laws must receive a rational, sensible construction, one that will advance the remedy and repress the wrong, if that construction be consonant with their terms; that where a statute is plain and unambiguous, and its meaning clear, construction and interpretation have no place; that it is the intention expressed in the statute and that alone to which the courts may give effect; that they may not assume or presume purposes or intentions which the terms of the statute do not indicate, and then by judicial legislation add or expunge terms to accomplish these supposed intentions; that the natural and obvious meaning of a statute should be preferred to a curious recondite signification discovered by the study and ingenuity of unusually acute and powerful minds; and that when the Congress or other legislative body has made a clear general grant, prohibition, or provision, and makes no exception thereto, the legal presumption is that it intended to make none, and it is not the province of the courts to do so. "Where the Legislature makes a plain provision, without making any exception, the courts can make none." French v. Spencer, 62 U. S. (21 How.) 228, 238, 16 L. Ed. 97; McIver v. Ragan, 15 U. S. (2 Wheat.) 25, 29; Madden v. Lancaster County, 65 Fed. 188, 195, 12 C. C. A. 566; Omaha Water Co. v. City of Omaha, 147 Fed. 1, 13, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; Stevens v. Nave-McCord Mercantile Co., 150 Fed. 71, 75, 80 C. C. A. 25; United

States v. Deans, 230 Fed. 957, 961, 145 C. C. A. 151; Soliss v. General Electric Co., 213 Fed. 204, 205, 129 C. C. A. 548; Northern Pacific Railway Co. v. United States, 213 Fed. 162, 129 C. C. A. 514, L. R. A. 1917A, 1198; Elder v. Western Mining Co., 237 Fed. 966, 973, 150 C. C. A. 616; Brun v. Mann, 151 Fed. 145, 157, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154.

Section 3082 prohibited clearly and generally the importation of merchandise contrary to law and denounced the concealing, facilitating the transportation or concealment of such merchandise after importation, knowing it to have been imported contrary to law. The contention is that in the enforcement of this statute the courts should except from the phrase contrary to law (1) such merchandise imported contrary to law as was not imported in violation of some provision of the Customs Act; and (2) such merchandise imported contrary to law as was imported contrary to any law that was not in force at the time when section 3082 or its last amendment was enacted. A patient and deliberate consideration of the arguments and authorities presented has failed to satisfy that it was the purpose or intention of Congress to modify or limit the plain terms and natural obvious meaning of the general words "contrary to law" in this section 3082 by either of these exceptions. The natural meaning of that phrase, the signification which first comes to the mind, and which, after deliberation in view of the rules of interpretation cited, rests in abiding conviction, is contrary to any law in force at the time of the alleged violation of the statute, whether it was contrary to the provisions of the Customs Act or to the provisions of some other act of Congress, and whether it was contrary to the provisions of a law existing at the time of the enactment of section 3082 or its last amendment, or was subsequently enacted. Support is lent to this conclusion by the weight of authority. This section has been held to include merchandise imported contrary to law that was not dutiable, as well as merchandise that was dutiable. Estes v. United States, 227 Fed. 818, 820, 822, 142 C. C. A. 342; United States v. Nine Trunks, 27 Fed. Cas. pages, 161, 162, No. 15,885; Goldman v. United States (C. C. A.) 263 Fed. 340, 343; Daigle v. United States, 237 Fed. 159, 164, 150 C. C. A. 305; Ruehl v. United States (C. C. A.) 263 Fed. 376, 377.

It has been held to include merchandise imported in violation of a law which was not in force when section 3082 or its last amendment was enacted, but was subsequently passed. The Goodhope (D. C.) 268 Fed. 694; United States v. One Bag of Paradise, Etc., Feathers, 256 Fed. 301, 304, 167 C. C. A. 473; United States v. Four Packages of Cut Diamonds (D. C.) 247 Fed. 354, 357, 358; Feathers of Wild Birds v. United States (C. C. A.) 267 Fed. 964, 966, 967. And our conclusion is that the indictment set forth facts describing the objective offense in violation of section 3082 which it charged the defendant with conspiring to commit.

[6] The next question is: Was the portion of section 3082 which prohibits the offense of receiving, concealing, facilitating the transportation of or concealment of whisky imported contrary to law after importation, knowing it to have been imported contrary to law, repealed or

superseded by that portion of the act of November 21, 1918, which declares that after the approval of the act no distilled, malt, vinous, or other intoxicating liquors shall be imported into the United States during the continuance of the then present war and the period of demobilization, under a penalty of imprisonment not exceeding one year, or a fine not exceeding $1,000, or both such imprisonment and fine. 40 Stat. 1047 (Comp. St. Ann. Supp. 1919, § 3115$^{11}$⁄$_{12}$ggg). It is argued that this question should be answered in the affirmative, because the prohibition of the importation of the whisky by this act of November 21, 1918, was inconsistent with the permission of its importation upon payment of the duties and compliance with the requirements of sections 3061 to 3082 of the Customs Act, and in support of this position United States v. One Ford Automobile (C. C. A.) 262 Fed. 374, 376, is cited, wherein the Circuit Court of Appeals of the Second Circuit held, contrary to the conclusion at which this court has been forced to come, that section 3082 was not applicable to the importation of merchandise not subject to duties, and that one who had been fined and had paid his fine for importing whisky under the act of August 10, 1917, could not be deprived of the automobile in which he imported it by forfeiture under section 3062 (Comp. St. § 5764). Our conclusion that section 3082 applies to the importation of merchandise not dutiable, the fact that the acts of 1917 and 1918 neither prohibit nor penalize the offense of receiving, concealing, or facilitating the transportation or concealment of merchandise imported contrary to law, and the wide divergence between the facts of that case and of this, deprive the opinion and decision here cited of authoritative or persuasive force in the case at bar.

Counsel also cite many of the cases in which the courts have held, as has this court, that the National Prohibition Act (41 Stat. 305), whereby the importation, manufacture, and sale of intoxicating liquors were prohibited under severe penalties, repealed or superseded, because inconsistent therewith, such provisions of the Customs Act as imposed penalties for a failure to register a still or distilling apparatus, section 3258 (Comp. St. § 5994); a failure to give a bond to comply with the provisions of law relating to the duties and business of distillers, section 3260 (section 5997); for carrying on the business of a distiller with intent to defraud the United States out of the tax on the spirits distilled, section 3257 (section 5993); for failing to place and keep the words "Registered Distillery" on a distillery wherein accused worked, carried distilled spirits from and raw materials to, section 3279 (section 6019); for failing to pay the special tax for carrying on the business of a rectifier, liquor dealer, or manufacturer of stills, section 3242 (section 5965); and other similar provisions. Ketchum v. United States (C. C. A.) 270 Fed. 416; United States v. Windham (D. C.) 264 Fed. 376; Reed v. Thurmond (C. C. A.) 269 Fed. 252; United States v. Yuginni (D. C.) 266 Fed. 746; The Goodhope (D. C.) 268 Fed. 694; United States v. Stafoff et al. (D. C.) 268 Fed. 417; United States v. Fortman (D. C.) 268 Fed. 873; United States v. One Haynes Automobile (D. C.) 268 Fed. 1003.

But the opinions and decisions in these cases do not rule the legal question presented in this case because when the conspiracy in this

case is alleged to have been formed and the overt acts in its execution are alleged to have been done the National Prohibition Act had not taken effect. Hence the most that can be persuasively claimed for these opinions and decisions is that they furnish an argument by analogy for the position that the portion of section 3082 which denounces and penalizes the offense of receiving, concealing, facilitating the transportation and concealment of whisky after importation knowing it to have been imported contrary to law, was superseded or repealed by the act of August 10, 1917, or the act of November 21, 1918. But when a comparison is made between the relation of the portions of the Customs Act superseded and repealed and the National Prohibition Act on the one hand, and the relation of the portion of section 3082 here under consideration and the prohibitions of the acts of August 10, 1917, and November 21, 1918, the similarity requisite to sustain the argument by analogy utterly disappears. Section 35 of the National Prohibition Act provides that all provisions of law inconsistent with that act are repealed only to the extent of their inconsistency. The acts of August 10, 1917, and November 21, 1918, contain no provision for the repeal thereby of any law or any part of any law.

The provisions of the Customs Act which have been held to be repealed or superseded by the National Prohibition Act are utterly inconsistent with the absolute inhibition of the manufacture, sale, and importation of intoxicating liquors under new and heavy penalties contained in that act as the authorities which have been cited demonstrate. On the other hand, the portion of section 3082 that conditions the disposition of this case is perfectly consistent with the prohibition of the importation of intoxicating liquors contained in the act of August 10, 1917, and in the act of November 21, 1918. And these latter acts contain no denunciation whatever of and prescribe no penalty whatever for the receiving, concealing, facilitating the transportation and concealment of merchandise imported contrary to law after its importation, knowing it to have been imported contrary to law, but leave the specification of that offense and the penalty therefor to section 3082 alone. In this state of the case this argument by analogy fails to persuade, and no logical way of escape is found from the conclusion that the portion of section 3082 which alone describes the offense which was the alleged object of the conspiracy here, and which alone prescribes the penalty for its commission, was neither repealed nor superseded by the act of August 10, 1917, or by the act of November 21, 1918, when the conspiracy in this case was alleged to have been formed and executed, and the court below committed no error in overruling the demurrer to the indictment.

At the close of the evidence for the United States counsel for the defendant Goldberg moved the court to direct the jury to return a verdict in his favor, the court denied that motion, the defendant excepted, and his counsel contend that this ruling was erroneous, because there was no substantial evidence of his guilt. But an examination of the record of the evidence has left no doubt in our minds that there was substantial, competent evidence therein to sustain a verdict against

the defendant, and there was no error in the ruling of the court denying this motion.

After the motion for a directed verdict was denied, the defendant, without offering any evidence, pleaded guilty, and was sentenced to pay a fine of $5,000 and to be imprisoned in the penitentiary for 1 year and six months. His counsel have requested that in case this court should be of the opinion that there was no error in the trial of this case, and that the judgment must be sustained, it modify the sentence by remitting that part which imposes the imprisonment, or that it direct the court below to entertain a motion to set aside the judgment, to permit the plea of guilty to be withdrawn, and to grant a new trial. But this is a court for the correction of errors of law, and no error of law in this trial or in the other proceedings in this case has been discovered. Our judicial system and the act of Congress under which the defendant has been convicted intrust the determination of the extent of the punishment to be imposed within the limits prescribed by the statutes, not exceeding a fine of $10,000 or imprisonment not exceeding two years, or both, not to the appellate court, but to the trial court, to the judge who sees the parties and sees and hears the witnesses, and who is better qualified than the judges of the appellate court to exercise discretion in this matter.

There is no evidence of any abuse of his discretion by the judge who tried this case in prescribing the sentence, and, even if this court has the power under these circumstances to modify or set aside the judgment below as requested, it is convinced that there is nothing in the record here to justify it in pursuing so unusual a course, and the judgment below must be affirmed.

It is so ordered